## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Docket No. 2:14-cr-00051-NT |
| | ) | |
| RICHARD M. MOULTON, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON MOTION FOR COMPASSIONATE RELEASE

Richard M. Moulton, Jr., filed a *pro se* motion for compassionate release on August 11, 2020. Def. Mot. (ECF No. 68). After issuing an order to show cause and reviewing Mr. Moulton's response, I denied the motion, in part because there were no reported COVID-19 inmate infections at Mr. Moulton's Bureau of Prisons ("**BOP**") facility, Allenwood Medium FCI ("**Allenwood**"). Order Denying Mot. (ECF No. 73). Four weeks later, Mr. Moulton moved for reconsideration of my previous order on the ground that there were now reported infections at Allenwood. Def. Mot. for Reconsideration (ECF No. 75). I granted the motion for reconsideration (ECF No. 76), and I appointed counsel to represent Mr. Moulton (ECF No. 77). Appointed counsel filed the pending amended motion for compassionate release (ECF No. 80), which the Government opposes (ECF No. 81). No reply brief has been filed, and the time for doing so has expired. Mr. Moulton's amended motion for compassionate release (ECF No. 80) is **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 21, 2014, Mr. Moulton pleaded guilty to one count of distributing child pornography. Presentence Investigation Report (**"PSR"**) ¶ 3 (ECF No. 70-1). On November 6, 2014, I sentenced Mr. Moulton to 120 months imprisonment and ten years of supervised release. Judgment (ECF No. 49). By my calculations, he has served almost 80 months. The BOP, having considered deductions for good conduct, lists a projected release date of August 13, 2023. Accordingly, Mr. Moulton has served over 66% of the sentence I imposed and over 70% of his sentence if good-time deductions are factored in.

At the time of his sentencing, Mr. Moulton reported his overall health as "good," and the only condition he reported was chronic back pain PSR ¶¶ 58–59. Mr. Moulton now reports that he also has asthma, and this is substantiated by his medical records. Def.'s Am. Mot. for Compassionate Release ("**Am. Mot.**") ¶¶ 4, 6 (ECF No. 80); Richard Moulton Medical Records (ECF No. 80-1). In discussing his health history, Mr. Moulton, who is now 37 years old, also states that he smoked cigarettes for many years until his incarceration. Am. Mot. ¶ 7.

The number of active COVID-19 infections at Allenwood has dramatically declined over the last several weeks. *Compare* Melissa Farenish, *FCI Allenwood deals with COVID-19 outbreak: 78 positive inmate tests and 23 staff*, NorthcentralPA.com (Oct 6. 2020), https://www.northcentralpa.com/life/covid-19_updates/fci-allenwood-deals-with-covid-19-outbreak-78-positive-inmate-tests-and-23staff/article_4cc7ea5e-080d-11eb-a022-076e31972482.html, *and* Am. Mot. ¶ 3 (reporting twenty-one inmate infections and eleven staff infections as of Oct. 16, 2020), *with* Bureau of Prisons,

2

COVID-19 Inmate Test Information, https://www.bop.gov/coronavirus/ (last visited Oct. 29, 2020). Allenwood is currently reporting that five inmates and eleven staff members have active COVID-19 infections. Bureau of Prisons, COVID-19 Inmate Test Information, https://www.bop.gov/coronavirus/ (last visited Oct. 29, 2020). There have not been any inmate or staff deaths at Allenwood, and 108 inmates and one staff member have recovered from the virus. *Id.*

The Government acknowledges that Mr. Moulton has exhausted his administrative remedies by requesting compassionate release from the Warden at Allenwood. Gov't Opp'n to Def.'s Am. Mot. for Compassionate Release ("**Gov't's Opp'n**") 6 n.1 (ECF No. 81). Mr. Moulton's request was denied in July of 2020. Letter from Warden to Moulton (ECF No. 68-1).

## LEGAL STANDARD

Section 3582(c)(1)(A) provides that:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1)    in any case—
>
> (A)    the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i)    extraordinary and compelling reasons warrant such a reduction . . .
>
> (ii)   and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c).

The United States Sentencing Commission's policy statements on compassionate release are found at § 1B1.13 of the sentencing guidelines. Section 1B1.13 provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> > (1)(A) Extraordinary and compelling reasons warrant the reduction;
> >
> > . . . .
> >
> > (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> >
> > (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (U.S. Sentencing Comm'n 2018).

The Sentencing Commission elaborates on what constitutes "extraordinary and compelling reasons" in the Commentary to § 1B1.13. In discussing medical-based reasons, the Commission writes:

> (A) **Medical Condition of the Defendant.—**
>
> > (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples    include    metastatic    solid-tumor    cancer,

4

> > amyotrophic lateral sclerosis (ALS), end-stage organ
> > disease, and advanced dementia.
> >
> > (ii)    The defendant is —
> >
> > > (I)    suffering from a serious physical or medical
> > > condition,
> > > (II)   suffering from a serious functional or cognitive
> > > impairment, or
> > > (III)  experiencing deteriorating physical or mental
> > > health because of the aging process,
> >
> > > that substantially diminishes the ability of the defendant
> > > to provide self-care within the environment of a
> > > correctional facility and from which he or she is not
> > > expected to recover.
> >
> > ....

*Id.* § 1B1.13 cmt. n.1. The Note addresses age-based and family-based reasons in subdivisions (B) and (C), and then provides: "**Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."[1] *Id.*

---

[1]      Prior to the passage of the First Step Act of 2018 ("**First Step Act**"), only the Director of the Bureau of Prisons could move for modification of a sentence. In December of 2018, Congress amended § 3582(c) to allow inmates to seek a modification of sentence from the courts directly "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (codified at 18 U.S.C. § 3582(c)(1)(A)). Because the Sentencing Commission lacks a quorum, it has not considered whether to amend the commentary to § 1B1.13, in light of the First Step Act. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019).
         Subdivision (D) to Application Note 1 specifies that "the Director of the Bureau of Prisons" may decide if other extraordinary and compelling circumstances exist that warrant compassionate release. U.S.S.G. § 1B1.13, Application Note 1. Following the enactment of the First Step Act, district courts have split on the question of whether it is appropriate for courts to "exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release." *Beck*, 425 F. Supp. 3d at 579–80, 583. This Court and two others in the First Circuit have concluded that courts may consider other extraordinary and compelling reasons for compassionate release, notwithstanding the language of Subdivision (D) to Advisory Comment 1, after the First Step Act. *United States v. Fox*, 2:14-cr-03-DBH, 2019 WL 3046086, at *2–3 (D. Me. July 11, 2019) (collecting cases, discussing split of authority, and "agree[ing] with the courts that have said that the

5

## ANALYSIS

As the compassionate release statute and guidelines indicate, I may modify a sentence of imprisonment if I find that: (1) extraordinary and compelling reasons warrant modification, (2) modification accords with the § 3553(a) sentencing factors, (3) the petitioner is not a danger to the safety of any other person or the community, and (4) modification is consistent with applicable policy statements of the Sentencing Guidelines. I focus my analysis only on whether Mr. Moulton is a danger to the community. The Government has conceded that Mr. Moulton's smoking history qualifies as an extraordinary and compelling reason warranting modification. Gov't Opp'n 8–9.[2] And because I ultimately conclude that Mr. Moulton is a danger to the

---

Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive given the statutory change"); *see United States v. Rich*, No. 17-cr-094-LM, 2020 WL 2949365, at *2 n.1 (D.N.H. June 3, 2020) (same); *United States v. Pena*, No. CR 16-10236-MLW, 2020 WL 2798259, at *8 (D. Mass. May 29, 2020) (describing the requirement of subdivision D that the BOP determine that an extraordinary and compelling reason exists as "vestigial and inoperative" after the First Step Act); *see also United States v. Maher*, No. 2:04-cr-00093-GZS, 2020 WL 390884, at *3 (D. Me. Jan. 22, 2020) (declining to exercise the court's discretion under subdivision (D) to conclude that another reason warrants compassionate release). District courts outside of the First Circuit are split on the question. *Compare, e.g., United States v. Lisi*, 440 F. Supp. 3d 246, 250 (S.D.N.Y. 2020) ("[T]he Court finds that the majority of district courts to consider the question have found that the [First Step Act] grant[s] this Court the same discretion as that previously give to the BOP Director, and therefore the Court may independently evaluate whether Lisi has raised an extraordinary and compelling reason for compassionate release."), *and Beck*, 425 F. Supp. 3d at 579–80, 583 (same), *with United States v. Garcia*, 457 F. Supp. 3d 651, 656 (C.D. Ill. 2020) (concluding that the definition of "extraordinary and compelling reasons" does not directly conflict with the text of the First Step Act and "therefore conclud[ing that] the policy statement has not been overridden by the First Step Act to allow courts the same discretion conferred to the BOP Director by the Sentencing Commission's policy statement"), *and United States v. Sandoval*, No. CR14-5105RBL, 2020 WL 3077152, at *4 (W.D. Wash. June 10, 2020) (same) (citing ten cases).

[2]    The Government challenges whether Mr. Moulton's asthma qualifies as an extraordinary and compelling reason. Gov't Opp'n to Def.'s Am. Mot. for Compassionate Release ("**Gov't Opp'n**") 9–10 (ECF No. 81). I need not consider whether it does, because the Government's concession that Mr. Moulton's smoking history constitutes an "extraordinary and compelling" reason for purposes of § 3582(c), Gov't Opp'n 9, allows Mr. Moulton to clear this hurdle regardless.

community, and thus that compassionate release is not warranted, I need not conduct the remainder of the analysis.

The Government argues that Mr. Moulton should not be released because he is a danger to the community. Gov't Opp'n 10. Specifically, the Government highlights Mr. Moulton's criminal history, the six times that he has violated prison rules, and the serious nature of the crime to which he pleaded guilty. Gov't Opp'n 10–12. I agree with the Government that the risk that Mr. Moulton poses to the community is too great to warrant his release, although I come to this conclusion in a different manner.

Mr. Moulton has a long history of substance abuse problems, and much of his criminal history and many of his prison rule violations can be traced back to these problems. In 2002, at the age of eighteen, Mr. Moulton received a mostly suspended sentence after being convicted of assault and possession of heroin. PSR ¶¶ 37–38. While on probation, he was supposed to complete substance abuse treatment and was placed in a treatment program. PSR ¶ 37. However, Mr. Moulton violated his probation by testing positive for cocaine and later violated his probation a second time for twice failing to report for drug testing. PSR ¶ 37. After the second probation violation, he was removed from the treatment program. PSR ¶ 37.

In 2010, Mr. Moulton stole a cell phone from a gas station attendant while he was intoxicated. PSR ¶ 39. In 2012, he was convicted of Operating Under the Influence after he was found to have been driving with a BAC level of .11%. PSR ¶ 42. Mere months later, while he was out on bond for another crime, Mr. Moulton was convicted of violating the conditions of his release when he was found to be driving

(despite his suspended license) in an erratic manner and struck another car in a parking lot. PSR ¶ 44.

In 2013, Mr. Moulton was diagnosed with "Alcohol Abuse," and he was ordered by the Department of Child Protective Services to seek substance abuse counseling. PSR ¶¶ 61, 63. Despite this order, Mr. Moulton attended only "one to three sessions" before withdrawing from treatment. PSR ¶ 63. And during the limited time he was in treatment, he tended to minimize his substance use and did not fully engage in the treatment process. PSR ¶ 63. In fact, while in treatment, he punched his neighbor in the face while under the influence of Klonopin and alcohol. PSR ¶¶ 45, 63. This altercation resulted in another assault conviction. PSR ¶ 45.

Mr. Moulton also contends that he committed the offense for which he is currently imprisoned—distribution of child pornography—while he was drinking alcohol. PSR ¶ 11. And he indicated to Probation that accessing and distributing child pornography is "not something (he) would normally [have] do[ne]" but for his alcohol consumption. PSR ¶ 11.

Finally, it is notable that of Mr. Moulton's six violations of prison rules during his latest period of incarceration, three involved the use or possession of drugs or alcohol, including two within the last year (well over five years into his sentence). Gov't Opp'n 11.

It is clear from this history, including very recent history, that Mr. Moulton has failed to meaningfully address his substance abuse problems, regardless of the number of times it has contributed to his commission of a crime, or the number of

times he has gone to jail or been in treatment. Because of this, were I to grant Mr. Moulton compassionate release, I see little reason to believe that he will not return to his past patterns of abusing substances and committing crimes. This high likelihood of recidivism means that Mr. Moulton still poses a danger to the community and that compassionate release is not appropriate under these circumstances.

It is not enough that Mr. Moulton has shown that there exists an extraordinary and compelling reason warranting his release. In order to be entitled to a modification of his sentence, he must also show that he is not a danger to the community. He has failed to meet that burden.

## CONCLUSION

For the foregoing reasons, the Motion for Compassionate Release is **DENIED**.


SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated: October 29, 2020